NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 9 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROBERT MATOVU MUTAAWE,

Petitioner,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 25-4436

Agency No.
A215-600-898

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 5, 2026**
San Francisco, California

Before: GOULD, M. SMITH, and R. NELSON, Circuit Judges.

Petitioner Robert Matovu Mutaawe ("Mutaawe"), a native and citizen of

Uganda, petitions our Court to vacate the Board of Immigration Appeals' ("BIA")

affirmance of the Immigration Judge's ("IJ") denial of asylum, withholding of

removal, and protection under the Convention Against Torture ("CAT") based on an

---

   *      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

   **      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

adverse credibility finding. The parties are familiar with the relevant underlying facts, so we do not recount them here. We have jurisdiction pursuant to 8 U.S.C. § 1252 and deny the petition.

1. The Agency's adverse credibility determination was supported by substantial evidence.[1] Mutaawe did not plausibly explain his inconsistent testimony. Throughout his immigration proceedings, Mutaawe consistently stated that he was detained and beaten by the Ugandan government from July 5, 2017, to July 12, 2017. He did not express hesitation that, as he suggested on appeal to the BIA, perhaps his detention had actually been a different week in July 2017. At his Immigration Hearing, Mutaawe suggested that the date the photo of the Rotary Club event was posted may have differed from the date the event was held. But that explanation is wholly refuted by the Government's Exhibit 7, showing the date of the event in question to be July 8, 2017. In the present appeal, Mutaawe offers that he suffered head injuries that affected his memory. But there is no evidence to corroborate this explanation. Mutaawe's inconsistent testimony also involved "crucial date[s]" surrounding "the very event upon which [Mutaawe] predicated his claim for asylum" and other relief, *Rodriguez-Ramirez v. Garland*, 11 F.4th 1091, 1093 (9th Cir. 2021)

---

[1] Because the BIA adopted the IJ's reasoning and added some of its own, the IJ and BIA are collectively referred to as "the Agency" throughout and "we review the BIA's decision and those parts of the IJ's decision upon which it relied." *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021).

(internal quotation marks omitted), going to the heart of his claims for relief.

Mutaawe's lack of corroborating evidence underscores the significance of the conflict between his testimony and the Government's documentary evidence. Mutaawe did not get documentation from his hospital visit the day after being released from detention in July 2017, which could have corroborated both his alleged injuries and his timeline. Mutaawe also did not submit attestations from other orphanage workers about similar detention and/or torture they allegedly suffered, which would have helped lend credence to Mutaawe's version of events. Without such corroborating evidence, the Agency could only base its decision on Mutaawe's testimonial evidence, which was sufficiently undermined by contradictory documentary evidence. *See Don v. Gonzales*, 476 F.3d 738, 741–43 (9th Cir. 2007) (inconsistencies between testimony and documentary evidence that go to the heart of a claim support an adverse credibility finding).

The Agency sufficiently explained its reasons for finding Mutaawe's testimony incredible. It provided specific and cogent reasons for its disbelief, *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002), by identifying the clear inconsistency between Mutaawe's testimony and the documentary evidence. The Agency then explained "the significance of the discrepancy," *Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir. 2000) (internal quotation marks omitted), in that it "undermine[d] his entire claim." The Agency considered and rejected Mutaawe's explanations for the

inconsistency, including that he sustained memory-altering head injuries, finding those explanations implausible. *See Kumar v. Garland*, 18 F.4th 1148, 1154 (9th Cir. 2021) (requiring Agency to consider and address applicant's explanation for identified discrepancies). The Agency's reasons for finding Mutaawe's testimony incredible were "substantial and b[ore] a legitimate nexus to the finding" and nothing about its reasoning was "fatally flawed." *Zamanov v. Holder*, 649 F.3d 969, 973 (9th Cir. 2011) (internal quotation marks omitted).

2. Mutaawe raised for the first time in his Reply Brief that the panel should remand to the BIA on his CAT claim because such a claim can be made out "with evidence of country conditions alone." *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010). While it is true that CAT claims are not categorically barred based on an adverse credibility determination, Mutaawe waived this argument by not including it in his Opening Brief. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]rguments not raised by a party in its opening brief are deemed waived.").

**PETITION DENIED**.[2]

---

[2] Petitioner's Motion to Stay Removal (Dkt. No. 3) is denied as moot.